UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. CHERYL STERLING § | | |
| § | | |
| Plaintiff, § | CAUSE NO. _____ | |
| § | | |
| v. § | | |
| § | JURY TRIAL DEMANDED | |
| HOUSTON COMMUNITY COLLEGE § | | |
| SYSTEM § | | |
| § | | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Dr. Cheryl Sterling ("Plaintiff"), who files this Complaint against Defendant, Houston Community College System ("HCC" or "Defendant"), and alleges the following:

### I.
### Introduction

1. This action seeks equitable relief and compensatory damages, liquidated damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for Defendant's willful violations the Family Medical Leave Act (FMLA), the Equal Pay Act (EPA), 42 USC § 1981 and 42 U.S.C. § 1983.

### II.
### Parties

2. Plaintiff, Dr. Cheryl Sterling, is an African American female and a resident of Houston, Harris County, Texas. Dr. Sterling is a former employee of the Houston Community College System.

3. Defendant, the Houston Community College System, is a government entity as defined by Tex. Gov. Code 554.001, and may be served with process by serving its Chancellor, Dr. Cesar Maldonado, at 3100 Main St., Houston, TX 77002.

4. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

### III.
### Jurisdiction and Venue

5. This claim is brought pursuant to the Family Medical Leave Act, the Equal Pay Act 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

6. This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b) because the substantial part of the events or omissions giving rise to these causes of action occurred in the Southern District of Texas.

8. The amount in controversy is within the jurisdictional limits of this Court.

### IV.
### Facts

9. HCC is a public community college district and is governed by an elected nine-member Board of Trustees.

10. HCC operates six colleges (Central, Southwest, Southeast, Northwest, Northeast and Coleman).

11. Dr. Cheryl Sterling is a former employee of HCC.

12. Dr. Sterling's last position was Associate Vice Chancellor of Student Services.

13. Despite Dr. Sterling's significant experience as a senior level academician and administrator (36 years at HCC), and her superior qualifications, she has continuously been denied numerous opportunities for advancement over the last several years.

14. For example, in 2006, Dr. Sterling applied for and received the position of Associate Vice Chancellor, Student Services. However, Dr. Sterling was the only one of her peers that was required to apply for the position.

15. At that time, Dr. Irene Porcarello (Hispanic) was serving as the interim Vice Chancellor, Student Services, and was Dr. Sterling's immediate supervisor.

16. In June 2008, Dr. Porcarello was appointed President of Southeast College, and pursuant to her job description and existing protocol, Dr. Sterling assumed the role of interim Vice Chancellor of Student Services.

17. While Dr. Sterling was the interim Vice Chancellor of Student Services, HCC's enrollment increased to more than 60,000 students.

18. Dr. Sterling also assisted in the development of the award winning Recruitment and Retention Plan, that was highlighted throughout the state of Texas.

19. Dr. Sterling decreased testing cost by $200,000, and reduced and balanced the Department of Education Financial Aid deficit of $5mm to zero, which was the first time in the history of the institution.

20. In short, Dr. Sterling was responsible for every aspect of Student Services and exceeded every goal and task that was requested of her.

21. Despite Dr. Sterling's qualifications and accomplishments, it was made clear to her

that she was not to be considered for the permanent Vice Chancellor position. In fact, during a committee of the whole meeting of HCC's Board of Trustees, former Chair Abel Davila (Hispanic) specifically told former HCC Chancellor, Dr. Mary Spangler (Caucasian female): "you will hire a Hispanic for Vice Chancellor of Student Services."

22. The Boards' expectation that Hispanics were to be given preferential treatment with regard to employment opportunities within HCC is well documented.

23. It is no secret that HCC's Board members have expressed their opinions that there were too many African Americans in leadership roles, and that there should be more Hispanics in senior management positions.

24. It is not uncommon for a Board member to try to influence, if not force senior management to hire Hispanics for lucrative positions.

25. In fact, Chancellor Spangler was told that if she did not hire more Hispanics in administrative positions, she would be fired.

26. Trustee Davila also actively pushed to obtain a role for a Hispanic owned subcontractor to be hired by one of HCC's vendors on a lucrative contract (Energy Services Performance Contract that was awarded to Chevron), and when he did not believe they were getting their "piece" he threatened to have the contract canceled.

27. Because Trustees had made clear their expectation that a Hispanic would be hired for the vacant Vice Chancellor position, Dr. Sterling was told that she should not even apply.

28. Dr. Sterling submitted an application for the vacant Vice Chancellor position anyway.

29. Despite the fact Dr. Sterling was the best qualified, the most knowledgeable and had been fulfilling all of the duties and responsibilities of the position for the last eighteen (18)

months, she was not even given the opportunity to interview.

30. Instead, in December of 2009, Dr. Diana Pino (Hispanic) was hired as the Vice Chancellor for Student Success.

31. Shortly thereafter, despite being directed by one of HCC's Trustees to hire Hispanics to be the leaders of the employee group of HCC's $45mm Qatar Community College Contract, HCC's former Deputy Chancellor, Dr. Art Tyler (Black male), asked Dr. Sterling if she would be willing to go to the Middle East to lead and establish a community college in Doha Qatar.

32. Accordingly, Dr. Sterling left for the Middle East in June 2010.

33. Upon Dr. Sterling's return in September 2012, the Student Services department(s) were in complete chaos.

34. During late 2012 and early 2013, Chancellor Spangler was out on medical leave and Dr. Tyler believed he was to be considered "Acting" Chancellor and hoped that he would be named Chancellor.

35. In January of 2013, while Chancellor Spangler was out on FMLA leave, the Board was apparently unhappy with the amount of Hispanics hired for senior positions, and directed Dr. Tyler to remove Mr. Willie Williams (Black male) from his position as Chief Human Resources Officer.

36. Shortly thereafter, in March of 2013, the remainder of Dr. Spangler's contract was bought out and she resigned as Chancellor.

37. Apparently because Dr. Tyler had refused to give preferential treatment to Hispanics in the past, he was denied the opportunity to serve as Chancellor (or even interim Chancellor) and resigned shortly thereafter in July of 2013.

38. At this time, Rene Byas (Black female), HCC's former General Counsel, was acting

as interim Chancellor.

39. On May 13, 2014, Dr. Cesar Maldonado (Hispanic male) was named as the new Chancellor to replace Dr. Spangler.

40. A few weeks after Dr. Maldonado was named Chancellor, Ms. Byas was terminated.

41. A couple of weeks after Ms. Byas was terminated, Destinee Waiters (Black female), HCC's in-house counsel, resigned.

42. After it was announced that Dr. Maldonado would be the new Chancellor, Dr. Ricardo Solis (Hispanic), an HCC Director and former colleague of Dr. Maldonado, sent an email to another colleague bragging: "Now WE will get preferential treatment. I'll put in a good word for you."

43. Dr. Pino left HCC in March of 2015.

44. Although Dr. Sterling was again the most qualified person to assume the role of interim Vice Chancellor, Dr. Maldonado named Dr. Porcarello interim Vice Chancellor of Student Services.

45. During this same time frame, Dr. Sterling applied for the position of President of Coleman College.

46. Despite the fact Dr. Sterling was more qualified for the position, Dr. Maldonado hired Dr. Phil Nicotera (Hispanic male) as President of Coleman College.

47. In May of 2015, Dr. Sterling was required to take leave under the Family and Medical Leave Act, returning in August of 2015.

48. Shortly after Dr. Sterling returned from FMLA leave, Dr. Porcarello was reassigned to her previous position and Dr. Kim Beatty was named interim Vice Chancellor of Student

Success.

49. Here again, contrary to established custom and protocol, and without any reason being given, Dr. Sterling was not given any consideration and was denied the opportunity to fill the vacancy.

50. Around this same time period, Dr. Maldonado removed Shantay Grays (Black female), former Chief of Staff under Chancellor Spangler, and replaced her with Melissa Gonzales (Hispanic female), at a significantly higher salary.

51. Ms. Grays was reassigned to the position of Associate Vice Chancellor of Student Services, effectively cutting Dr. Sterling's area of responsibility in half.

52. In or around November 2015, Dr. Beatty was suspended and Dr. Nicoterra, who had only been hired a few months earlier, was named interim Vice Chancellor of Student Services; once again, denying Dr. Sterling the opportunity to assume the role as was clearly stated in her job description.

53. Sometime during the spring of 2016, the President of Southwest College retired and Dr. Maldonado assigned Dr. Madeline Burillo (Hispanic) as the interim President.

54. Dr. Sterling applied for the position of President, Southwest College; however, here again, she was told by a Board Trustee (Neeta Sane) that the position would be filled by a Hispanic.

55. Shortly thereafter, in April of 2016, Dr. Burillo was named President of Southwest College.

56. Dr. Sterling was further denied the opportunity for advancement when around this same time, Dr. Maldonado named Dr. Athos Brewer Vice Chancellor of Student Services.

57. Prior to being hired as the Vice Chancellor, Dr. Athos was the Vice President of the Bronx Community College.

58. According to their website, the Bronx Community College has one campus, offers degrees and certificates in 16 different fields and has less than 12,000 students.

59. In contrast, HCC operates six (6) colleges, offers degrees and certificates in twenty-one (21) different fields and has almost 60,000 students.

60. Yet despite her superior qualifications and experience, Dr. Sterling was not even considered for the Vice Chancellor of Student Services position.

61. In June of 2016, Dr. Sterling contacted HCC's internal EEO department and complained that she was being discriminated against.

62. Shortly thereafter, in a memorandum dated October 25, 2016, Dr. Sterling was notified that her position was going to be eliminated and that she would be required to "apply" for an available position.

63. Dr. Sterling was further notified that if she was not "chosen" to fill one of the new positions, or unable to secure employment in another position, her employment would be terminated.

64. HCC's contention that Dr. Sterling's position was to be eliminated is simply not credible. During the last four years, Dr. Sterling had been responsible for all duties and responsibilities associated with the Student Services department district wide, receiving only positive reviews.  Such duties and responsibilities cannot be eliminated.

65. HCC's requirement that Dr. Sterling "apply" for available positions constitutes constructive discharge, and is a mere pretext for intentional discrimination/retaliation.

66. Numerous others, outside of Dr. Sterling's protected class, were not required to "apply" for available positions during other reorganizations or "transformations."

67. Dr. Sterling had been with HCC for more than 36 years; her qualifications to fill any available position within HCC was well known and it would be difficult to imagine anyone coming into the system to fill any alleged "new" position within Student Services who would be as qualified as her, much less someone more qualified.

68. In addition to the forgoing, Dr. Sterling's male counter parts, in position requiring equal skill, effort and responsibility under similar working conditions were being paid more, at a higher grade level.

## VI.
## Claim For Releif

69. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

70. As described above, HCC is an employer and Dr. Sterling was an employee as those terms are defined by the FMLA, the EPA and 42 USC sections 1981 and 1983.

71. Dr. Sterling worked in a position requiring equal skill, effort and responsibility under similar working conditions, but HCC paid Dr. Sterling less than male employees in comparable positions.

72. By its conduct, HCC knowingly and willfully discriminated and retaliated against Dr. Sterling because of her protected activity under the FMLA, her race in violation of 42 USC sections 1981 and 1983, and her sex in violation of the EPA.

73. Dr. Sterling has been damaged as a result of the discrimination/retaliation and is entitled to all remedies enumerated under all applicable statutes.

74. Further, HCC acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Dr. Sterling.

75. HCC's discriminatory and retaliatory actions have caused Dr. Sterling to suffer loss of wages, both in the past and in the future.

## VII.
## Damages

76. Each and every allegation contained in the foregoing paragraphs are re-alleged as if fully re-written herein, and incorporated by reference.

77. Defendant's unlawful acts give rise to the following damages: back pay, compensation for lost future pay; compensatory damages, benefits in the past and the future, costs, expert witness fees, attorneys' fees, and pre- and post-judgment interest as allowed by law.

## VIII.
## Contitions Precedent

78. All conditions precedent to Plaintiff's request for relief have been performed, have occurred, or have been excused.

## IX
## Demand for Jury Trial

79. Plaintiff, Dr. Cheryl Sterling, asserts her rights and demands a trial by jury on all issues.

## X.
## Relief Requested

80. WHEREFORE, Plaintiff respectfully requests judgment be entered in her favor awarding her:

   a. Actual damages for the period of time provided by law, including appropriate back pay and reimbursement (past and future) for lost benefits;
   b. Front pay, including benefits;
   c. Liquidated, compensatory, exemplary and punitive damages as allowed by law;
   d. Attorney's fees both for this cause and for any appeals;

e. Expert witness fees incurred by Plaintiff in the preparation and prosecution of this action;

f. Pre-judgment and post-judgment interest as allowed by law;

g. Costs of court and other costs of prosecuting Plaintiff's claim; and

h. Such other and further relief as may be allowed by law.


Respectfully submitted,

**/s/ *David Manley***
David J. Manley
Texas State Bar No. 24001593
S.D. Tex. Bar No. 24301
15201 Mason Rd. Suite 1000-211
Cypress, Texas 77433
Phone: (281) 687-6889
Fax: (713) 481-6367
dmanleylaw@aol.com


**ATTORNEY FOR PLAINTIFF DR. CHERYL STERLING**